UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

Case No.:

| | |
|---|---|
| CRAIG SCHMIDT, LERON LEVY, PETER LOWDEN, | CLASS ACTION COMPLAINT |
| Plaintiffs, | |
| vs. | |
| CARRIER IQ, INC., SAMSUNG AMERICA, INC. and RESEARCH IN MOTION CORP., | |
| Defendants _____/ | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Craig Schmidt, Leron Levy and Peter Lowden, on behalf of themselves and all others similarly situated, by and through their undersigned counsel, upon knowledge as to themselves and otherwise upon information and belief, allege as follows:

**NATURE OF ACTION AND FACTUAL ALLEGATIONS**

1. This is a Class Action lawsuit brought by, and on behalf of, similarly situated individuals who purchased and used Samsung America, Inc. ("Samsung") cellular phones running the Android operating system, and Research in Motion ("RIM") cellular phones from November 23, 2009 through November 23, 2011 ("Class Period"), which contained the software program Carrier IQ ("monitoring software") developed by Carrier IQ, Inc. ("CIQ") on the devices.

2. Upon information and belief, each and every Samsung cellular phone running the Android operating system and each and every Research in Motion cellular phone that was

1

purchased in the United States during the Class Period, came equipped with the monitoring software preinstalled on the phone.

3. Upon information and belief, the monitoring software was preinstalled on Plaintiffs' cellular phones by Samsung, RIM and/or CIQ, respectively, and was provided to Samsung and RIM by CIQ for that purpose.

4. The monitoring software was loaded onto Plaintiffs' cellular phones prior to the Plaintiffs' purchases of their cellular phones, and was loaded onto the subject phones without the Plaintiffs' knowledge, consent or permission.

5. In fact, even after Plaintiffs' purchased their cell phones, they were not told of the presence of the monitoring software on their phones.

6. Upon information and belief, CIQ developed the monitoring software to intercept, track, record, and log the activities, keystrokes, button presses, and searches, including, but not limited to, the user's searches, emails, dialed phone numbers, location, text messages, and Google searches.

7. The monitoring software is known in technical circles as a "rootkit," which is software that enables continued privileged access to a computer while actively hiding its presence from administrators by subverting standard operating system functionality or other applications. (http://en.wikipedia.org/wiki/Rootkit)

8. Defendants have designed the monitoring software to run on Plaintiffs' cellular phones in such a manner as to be completely undetectable.

9. Defendants have designed the monitoring software in such a manner that Plaintiffs were not given the option to opt out of the "services" it provides. Moreover, Plaintiffs were unable to opt out of the "services" provided.

10. None of the information Defendants obtained via the monitoring software was obtained with any of the Plaintiffs' knowledge, permission or consent.

11. Upon information and belief, the monitoring software performed as intended by CIQ, Samsung and RIM during usage during the Class Period, that is the monitoring software remained hidden and without permission from Plaintiffs intercepted, recorded and logged nearly all of Plaintiffs' activities and communications and transmitted some, or all, of this data to CIQ, Samsung or RIM without Plaintiffs' knowledge, consent, or permission.

12. Samsung, RIM, and CIQ configured the monitoring software such that it did not notify Plaintiffs of its activities via "permissions" requests or otherwise.

13. The aforementioned manner in which the monitoring software was designed, installed and configured is contrary to the "Privacy Policy" statements maintained by Samsung, RIM, and CIQ.

14. The monitoring software was designed to evade detection and did so until the end of November 2011, when independent security researcher, Trevor Eckhart ("Eckhart"), discovered the monitoring software's existence and activities. Eckhart posted his findings on his website, despite the threat of litigation by CIQ intended to suppress the public disclosure of its monitoring software and keep its activities concealed from the Plaintiffs.

15. Defendants' willful and knowing actions violated the Federal Wiretap Act, the Stored Electronic Communication Act, and the Federal Computer Fraud and Abuse Act. The Plaintiffs seek damages and injunctive relief under these statutes on behalf of the entire Class for these violations.

Litigation Partners PL - 2 S. Biscayne Blvd. - Suite 3100 - Miami, FL 33131 - (305) 371-3666

## THE PARTIES, JURISDICTION AND VENUE

16. At all times material, Plaintiff, Craig Schmidt, was a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

17. At all times material, Plaintiff, Leron Levy, was a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

18. At all times material, Plaintiff, Peter Lowden, was a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

19. Defendant, Carrier IQ, Inc., is a foreign corporation with its principal place of business located at 1200 Villa Street, Suite 200 Mountain View, California 94041.

20. Defendant, Samsung America, Inc. is a foreign corporation with its principal place of business located at 85 Challenger Road, Ridgefield Park, New Jersey 60048.

21. Defendant, Samsung American, Inc., is authorized to conduct business, and conducts business, in the State of Florida.

22. Defendant, Research In Motion Corporation, is a foreign corporation with its principal place of business located at 122 West John Carpenter Parkway, Suite 430, Irving, Texas 75039.

23. Defendant, Research in Motion Corporation is authorized to conduct business, and conducts business, in the State of Florida.

24. Defendants committed tortious acts within the State of Florida and caused injury to persons and property within the State each and every time Defendants unlawfully recorded, or captured, a keystroke Plaintiffs' made on their cellular phones, and/or recorded the location of Plaintiffs and Plaintiffs' cellular phones and/or recorded and

stored various other information from Plaintiffs' cellular phones without Plaintiffs' consent. Defendants' contacts with Florida constitute constitutionally sufficient minimum contacts such that subjecting Defendants to personal jurisdiction in this State does not offend traditional notions of fair play and substantial justice.

25. This Court has subject matter jurisdiction over this action and Defendants pursuant to 28 U.S.C. § 1331 because this action arises under federal statutes, namely the Federal Wiretap Act, 18 U.S.C. § 2511, the Stored Electronic Communication Act, 18 U.S.C. § 2701, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 and pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000.

## FACTUAL BACKGROUND

26. Plaintiff, Craig Schmidt, during the Class Period, purchased and used a cellular phone that was manufactured by RIM during the Class Period.

27. Plaintiff, Leron Levy, during the Class Period, purchased and used a cellular phone running the Android operating system that was manufactured by Samsung during the Class Period.

28. Plaintiff, Peter Lowden, during the Class Period, purchased and used a cellular phone running the Android operating system that was manufactured by Samsung during the Class Period.

29. During the Class Period, Plaintiffs' cellular phones contained the monitoring software developed by CIQ.

30. Plaintiffs were unaware of the presence of the monitoring software on their cellular phones.

31. Plaintiffs were never told by any of the Defendants of the presence of the monitoring software on their cellular phones.

32. The monitoring software was placed on Plaintiffs' cellular phones by the Defendants without the knowledge, consent and permission of Plaintiffs.

33. The monitoring software functioned as intended and intercepted, recorded, and logged nearly all of Plaintiffs' activities and communications and transmitted some, or all, of this data to CIQ, Samsung or RIM without Plaintiffs' knowledge, consent or permission.

34. The monitoring software unlawfully intercepted, tracked, recorded, and logged Plaintiffs' activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location, and text messaging contents and transmitted some, or all, of this data to CIQ, Samsung and/or RIM without Plaintiffs' knowledge, consent or permission.

35. Plaintiffs were unaware of the presence of the monitoring software on their cellular phones until the end of November 2011, when independent security researcher, Trevor Eckhart discovered and publicized the monitoring software's existence and activities.

36. Plaintiffs have been damaged by Defendants' continuous and secretive monitoring, transmission and storage of Plaintiffs' cellular phone activities.

## CLASS ACTION ALLEGATIONS

### THE CLASS

37. Plaintiffs seek to represent on a class-wide all persons similarly situated, to wit: all persons in the United States who purchased and used Samsung America, Inc. ("Samsung") cellular phones running the Android operating system and Research in Motion ("RIM") cellular phones from December 1, 2009 through December 1, 2011

Litigation Partners PL - 2 S. Biscayne Blvd. - Suite 3100 - Miami, FL 33131 - (305) 371-3666

("Class Period"), which contained the software program Carrier IQ ("monitoring software") developed by Carrier IQ, Inc. ("CIQ") on the devices and unlawfully monitored, tracked, recorded, logged and transmitted the activities, keystrokes, button presses, and searches of the subject cellular phone users to CIQ, Samsung and/or RIM.

38. Excluded from the prospective Class are the Defendants' employees and the employees of the law firm of Litigation Partners, P.L.

39. Plaintiffs seek certification pursuant to Federal Rule of Civil Procedure 23.

## NUMEROSITY

40. While the exact number of Class Members is unknown to Plaintiffs at this time, Plaintiffs believe in good faith that they number in the tens, if not hundreds, of thousands based on publicly available sales data for the subject cellular phones. Therefore, the members of the Class are so numerous that joinder of all members if impractical.

41. In addition, upon information and belief, Defendants maintain their cellular phone records and monitoring software records on computerized systems. Therefore, the number and identity of the members of the Class is readily determinable through information already in Defendants' possession that is as yet unavailable to Plaintiffs.

## PREDOMINANCE AND COMMONALITY

42. The questions of law and fact common to the claims of each Class member overwhelmingly predominate over any questions of law or fact affecting only individual members of the Class as the Defendants acted in a uniform manner to each Plaintiff and no individualized conduct by any Plaintiff or prospective Class Member affects the claims or defenses.

43. Further, the issues relating to the claims of Plaintiffs do not vary from the issues relating to the claims of the other members of the Class, making a Class Action the most efficient way to resolve all claims.

44. Certification of the Class under Federal Rule of Civil Procedure 23 is supported by the following questions of law and fact common to the Class:[1]

   a. Whether Defendants' unlawful interception, tracking, recording, and logging of their consumers' activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ, Samsung and/or RIM without Plaintiffs' knowledge, consent or permission violated 18 U.S.C. § 2511 ("The Federal Wiretap Act");

   b. Whether Defendants' unlawful interception, tracking, recording, and logging of their consumers' activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ, Samsung and/or RIM without Plaintiffs' knowledge, consent or permission violated 18 U.S.C. § 2701 ("The Unlawful Access to Stored Communications Act"); and

   c. Whether Defendants' unlawful interception, tracking, recording, and logging of their consumers' activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ, Samsung

---

[1] The list of common questions of law and fact is not intended to be exhaustive and by setting forth this summary, Plaintiffs do not waive their right to raise other common questions of law and fact.

and/or RIM without Plaintiffs' knowledge, consent or permission violated 18 U.S.C. § 1030 ("The Computer Fraud and Abuse Act.")

45. Certification of the Class under Federal Rule of Civil Procedure 23 is also supported by the following considerations:

   a. The relatively small amount of damages that members of the Class have suffered on an individual basis would not justify their prosecution of separate lawsuits;

   b. There is no known previously filed action against Carrier IQ, Inc., Samsung America, Inc. and Research In Motion Corporation on whether Defendants' interception, tracking, recording, and logging of their consumers' activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ, Samsung and/or RIM without Plaintiffs' knowledge, consent or permission violated 18 U.S.C. § 2511;

   c. There is no known previously filed action against Carrier IQ, Inc., Samsung America, Inc. and Research In Motion Corporation on whether Defendants' interception, tracking, recording, and logging of their consumers' activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ, Samsung and/or RIM without Plaintiffs' knowledge, consent or permission violated 18 U.S.C. § 2701; and

   d. There is no known previously filed action against Carrier IQ, Inc., Samsung America, Inc. and Research In Motion Corporation on whether Defendants' interception, tracking, recording, and logging of their consumers' activities,

Litigation Partners PL - 2 S. Biscayne Blvd. - Suite 3100 - Miami, FL 33131 - (305) 371-3666

keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ, Samsung and/or RIM without Plaintiffs' knowledge, consent or permission violated 18 U.S.C. § 1030.

46. Aggregating this litigation in this forum is desirable because Defendants' alleged tortious conduct has been regular and systematic in Miami-Dade County, Florida and, upon information and belief, hundreds, if not thousands, of individuals have been harmed in Miami-Dade County, Florida by Defendants' actions.

47. No difficulties will be encountered in the management of Plaintiffs' claims on a Class basis because the Class is readily definable and the prosecution of this lawsuit as a Class Action will ensure the most efficient redress of harm and reduce the possibility of repetitious litigation.

## TYPICALITY

48. Plaintiffs' claims are typical of absent Class Members' claims because all of the members of the Class have been similarly affected by Defendants' interception, tracking, recording, and logging of their activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents and transmission of some, or all, of this data to CIQ, Samsung and/or RIM without the consumers' knowledge, consent or permission.

## ADEQUACY OF REPRESENTATION

49. Plaintiffs' interests are common to, and coincide with, those of all absent Class Members because by proving their individual claims they will necessarily prove Defendants' liability as to the Class claims.

50. In addition, Plaintiffs' interests and claims are not antagonistic to those of any other Class Members, nor are they subject to any unique defenses.

51. Plaintiffs are also cognizant of, and determined to faithfully discharge, their fiduciary duties to the absent Class Members if appointed Class Representatives.

52. Plaintiffs will, therefore, fairly and adequately protect the interests of absent Class Members. They are also committed to the vigorous prosecution of this action and, to do so, have retained competent counsel who are experienced in Class Action litigation.

## SUPERIORITY

53. A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individually litigating whether Defendants' actions violated applicable federal laws make it effectively impossible for individual Class Members to seek redress in the courts for the wrongs complained of herein.

54. Moreover, since Plaintiffs seek an Order that Defendants' actions violated applicable federal laws, this matter can only be efficiently handled as a class-based action, since the determination of impropriety will decide that issue with respect to all members of the Class. The alternative would be for each and every other Class Member to file an individual suit for damages once the Court finds Defendants' actions to be improper and a breach of the applicable federal laws. This alternative is not only impractical and inefficient, it would likely result in a miscarriage of justice since only class treatment ensures that each Class Member receives notice of their right to damages.

55. Class treatment, therefore, ensures uniformity and consistency in results; enables the many small claims of Class Members to be brought efficiently; and will provide optimum notice and damages to Class Members.

56. The advantages of maintaining this lawsuit as a Class Action, therefore, far outweigh the alternative – the waste and expense of hundreds, if not thousands, of separate adjudications for damages. A Class Action is clearly the superior vehicle for adjudicating these claims.

## MANAGEABILITY

57. There are no unusual difficulties likely to be encountered in the management of this action as a Class given the finite issues and limited discovery necessary to establish both the appropriateness for certification and the merits of this matter. This Court can, therefore, effectively manage the Class Action.

## COUNT I

## VIOLATION OF THE FEDERAL WIRETAP ACT, 18 U.S.C. § 2511

58. Plaintiffs incorporate by reference paragraphs 1 - 57 above as though fully set forth herein and further allege:

59. The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, prohibits the willful interception of any wire, oral, or electronic communication and the disclosure of its contents to anyone apart from its intended recipient.

60. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire, oral or electronic communication is intercepted.

61. Defendants Samsung, RIM, and CIQ placed monitoring software developed by CIQ on Plaintiffs' cellular phones in order to intercept, monitor, track, record, log and transmit

the contents of Plaintiffs' electronic communications to unauthorized third parties, including the activities, keystrokes, button presses, and searches of Plaintiffs.

62. Neither the Plaintiffs nor members of the Class consented to nor were aware that the Defendants were violating the Federal Wiretap Act, as well as each Defendant's own, individual privacy policies, and tracking Plaintiffs' activities, keystrokes, button presses and searches.

63. The intercepted data, including but not limited to, the activities, keystrokes, button presses and searches of Plaintiffs, are "communications" within the meaning of the Wiretap Act.

64. Defendants intentionally and willfully placed the monitoring software on Plaintiffs' cellular phones and, thus, intentionally and willfully intercepted the electronic communications of Plaintiffs and other members of the Class.

65. Plaintiffs are persons whose electronic communications were intercepted within the meaning of Section 2520.

66. Section 2520 provides for preliminary, equitable and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 a day for each violation, actual and punitive damages, reasonable attorneys' fees, and disgorgement of any profits earned by Defendants as a result of the above-described violations.

67. Plaintiffs and other members of the Class were harmed by Defendants' violations, and are therefore entitled to statutory, actual and compensatory damages, injunctive relief, punitive damages, and reasonable attorneys' fees.

## COUNT II

## VIOLATION OF THE STORED ELECTRONIC COMMUNICATIONS ACT

## 18 U.S.C. § 2701

68. Plaintiffs incorporate by reference paragraphs 1 - 57 above as though fully set forth herein and further allege:

69. The Stored Electronic Communications Act ("SECA") provides a cause of action against a person who intentionally accesses without authorization a facility through which an electronic communication service is provided or who intentionally exceeds an authorization to access that facility and thereby obtains, alters or prevents authorized access to a wire or electronic communication while it is in storage in such a system.

70. "Electronic storage" is defined in the statute to be "any temporary, immediate storage of a wire or electronic communication incidental to the electronic transmission thereof."

71. Plaintiffs' cellular telephones are facilities through which electronic communications services are provided under SECA.

72. Defendants intentionally placed monitoring software on Plaintiffs' cellular phones that accessed their stored electronic communications without authorization, and thus violated SECA.

73. Plaintiffs and other members of the Class were harmed by Defendants' violations, and are therefore entitled to statutory, actual and compensatory damages, injunctive relief, punitive damages, and reasonable attorneys' fees.

### COUNT III

### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

74. Plaintiffs incorporate by reference paragraphs 1 - 57 above as though fully set forth herein and further allege:

75. Plaintiffs' cellular telephones are protected computers under the Computer Fraud and Abuse Act.

76. Each Plaintiff's phone was intended to be used and was used for interstate commerce or communication.

77. Defendants knowingly caused the transmission of a program, information, code, or command to and from the Plaintiffs cellular telephones, and as a result, of such conduct, intentionally caused damage without authorization, to a protected computer.

78. Defendants, therefore intentionally accessed a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer in violation of the Computer Fraud and Abuse Act.

79. Plaintiffs were directly and proximately damaged in the amount they paid for their cellular phones, as well as the repeated violations of their privacy.

80. Defendant's unlawful access to Plaintiffs' computers and communications have therefore caused damages, as well as irreparable injury to Plaintiffs' privacy. Unless restrained and enjoined, Defendants are likely to continue to commit such acts. Plaintiffs' remedies at law are not adequate to compensate for these inflicted and threatened injuries, entitling

Plaintiffs and the Class to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

## COUNT IV

## INJUNCTION AND DECLARATION

81. Plaintiffs incorporate by reference paragraphs 1 - 57 above as though fully set forth herein and further allege:

82. Plaintiff, Craig Schmidt, purchased, owns, uses and carries with his a cellular phone that was manufactured by RIM, and has done so at all times relevant to this action.

83. Plaintiff, Leron Levy, purchased, owns, uses and carries with him a cellular phone running the Android operating system that was manufactured by Samsung, and has done so at all times relevant to this action.

84. Plaintiff, Peter Lowden, purchased, owns, uses and carries with him a cellular phone running the Android operating system that was manufactured by Samsung, and has done so at all times relevant to this action.

85. Defendants did not explain or disclose the monitoring software installed on Plaintiffs' cellular phones.

86. Defendants knew that Plaintiffs were unaware of the monitoring software installed on their cellular phones.

87. Defendants knew that Plaintiffs were unaware that their activities, keystrokes, button presses, and searches, including but not limited to, Google searches, emails, phone numbers dialed, location and text messaging contents were being intercepted, tracked, recorded, and logged by Defendants.

Litigation Partners PL - 2 S. Biscayne Blvd. - Suite 3100 - Miami, FL 33131 - (305) 371-3666

88. Once Plaintiffs began carrying and using their cellular phones, Defendants began tracking their activities and location. This has happened in the past and continues to happen all across the United States.

89. Irreparable injury has resulted and continues to result from Defendants' unauthorized interception, tracking, recording and logging of the activities of thousands, if not more, of Defendants' cellular phone users.

90. It is unconscionable to allow Defendants to continue, unlawfully and without consent, intercepting, tracking, recording and logging the activities and locations of Plaintiffs and proposed Class Members – actions which have shocked and alarmed consumers across America who have learned of Defendant' practices in recent days.

91. Inadequate remedy at law exists because users of Defendants' products have no way to prevent Defendants from collecting this information, because even if users disable their cellular phones, Defendants' monitoring software remains fully functional.

92. The balance of the hardships favors Plaintiffs and the Class because it is easier for Defendants to stop unlawfully intercepting, tracking, recording and logging the activities and locations of thousands, if not more, Americans than it is for individual consumers to circumvent Defendants' sophisticated monitoring software which cannot now be turned off or disabled. To require that Plaintiffs and the Class bear the consequences of Defendants' unlawful acquisition of personal information, including internet searches, telephone numbers dialed and text messages, would be inequitable.

93. The public interest would not be disserved, and indeed would be advanced, by entering injunctions against Defendants.

Litigation Partners PL - 2 S. Biscayne Blvd. - Suite 3100 - Miami, FL 33131 - (305) 371-3666

94. The injunction should require Defendants to reconfigure their software so that users' personal location information, personal searches, personal text messages and other personal information and activities are not intercepted, tracked, recorded or logged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Determine that this action is a proper Class Action under Rule 23 of the Federal Rules of Civil Procedure;

B. Award compensatory damages, including statutory damages where available, in favor of Plaintiffs and the other members of the Class against Defendant for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Order the Defendants to disgorge all profits earned from their illegal wiretapping;

D. Enter declaratory and injunctive relief, permanently restraining Defendants, and their officers, agents, servants, employees and attorneys, from monitoring, tracking, recording, logging and transmitting the activities, keystrokes, button presses, and searches of Plaintiffs and members of the Class and otherwise violating Defendants' policies with their consumers;

E. Award Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

F. Award exemplary, treble or punitive damages;

G. Award reasonable attorneys' fees and costs; and

H. Grant Plaintiffs such further relief as the Court deems appropriate.

## JURY TRIAL DEMAND

The Plaintiffs demand a trial by jury of all issues so triable.

DATED this 2<u>nd</u> day of December, 2011.

Respectfully submitted by:

*/s/ Manuel L. Dobrinsky*
Manuel L. Dobrinsky
FBN 775525
MDobrinsky@fdlaw.net
Daniel D. Dolan II
DDD@dolan-law.com
FBN 84913

LITIGATION PARTNERS, P.L.
*Attorneys for Plaintiffs*
*Craig Schmidt, Leron Levy*
*and Peter Lowden*
One Biscayne Tower, Suite 3100
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 371-3666
Facsimile: (305) 371-6725

Case3:12-cv-02135-EMC Document1 Filed12/02/11 Page19 of 19